UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
08/26/2026
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CAUSE NO. 1:26-cr-160-JRO-MKK |
| | ) | |
| SHARON JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

**INFORMATION**

The United States Attorney charges that:

**General Allegations**

At all times material to this Information:

1. SHARON JACKSON was a resident of the Southern District of Indiana.

2. From in or around 2016 through in or around 2024, JACKSON operated three childcare facilities at different times, all of which were located in the Southern District of Indiana:

a. Precious Hearts of Solid Rock, located at 2598 North Arlington Avenue, Indianapolis, IN 46218;

b. Greater St. Mark Five Star Ministry, located at 5502 East 38th Street, Indianapolis, IN 46218; and

c. Little Angels of Precious Hearts (Little Angels), located at 2598 North Arlington Avenue, Indianapolis, IN 46218

(together, the “Daycares”).

## The Child Care and Development Fund Program

3. The Child Care and Development Fund (CCDF) was a federal program that helped low-income families obtain childcare so parents may work, attend training, or continue their education. The purpose of the CCDF program was to increase the availability, affordability, and quality of childcare. Eligibility was based on, among other things, family income and child age.

4. In Indiana, the CCDF program was administered by the Indiana Family and Social Services Administration (FSSA) and paid for through federal grants provided by the Department of Health and Human Services, Administration for Children and Families. Funds were authorized and paid only to certified and enrolled CCDF-eligible childcare providers. The amount of money available through the CCDF program was limited; there was a waitlist of families seeking to enroll in the program.

5. Families that were approved for the CCDF program were issued a voucher to be provided to the family's childcare provider. The voucher provided the childcare provider with information about the family's childcare assistance such as the rate of reimbursement, the number of hours of care that had been authorized, and the length of time the subsidy would last before a reauthorization must be completed.

6. Parents who enrolled in the CCDF program were also given a Hoosier Works Child Care (HWCC) card. Parents used this card to record time and attendance of their children when attending a childcare facility. Parents were required to swipe their HWCC card when dropping their children off at the childcare facility and again when picking their children up.

7. If parents failed to swipe their HWCC cards (for example, if they forgot their HWCC card at home), parents could report a child's attendance using the automated Interactive Voice Response (IVR) phone system. To report a child's attendance using the IVR system, a parent must call the IVR phone number and enter information specific to their family, including their CCDF voucher/care number, zip code, and the child's attendance information.

8. The attendance data submitted through the IVR system were stored in a data center in Utah with a back-up data center in New Jersey.

9. CCDF childcare providers were not allowed to possess or use a HWCC card or any other information enabling a provider to record a child's attendance. CCDF childcare providers were not permitted to report a child's attendance using the IVR phone system.

10. After the child's attendance was recorded, the attendance data were used to determine the total hours of care a child received from the childcare provider. The total amount of funds the childcare provider received for a child was based on that child's attendance.

11. Once the amount of the payment to the provider was determined, CCDF funds were deposited directly into the childcare provider's designated bank account every two weeks.

## The Child and Adult Care Food Program

12. The Child and Adult Care Food Program (CACFP) was a federal program that reimbursed participating entities that serve nutritious meals and snacks to children and adults at participating childcare centers, daycares, and after-school programs.

13. The United States Department of Agriculture (USDA) Food and Nutrition Service administered the program nationally by distributing federal funds to state governments. The Indiana Department of Education (IDOE) administered the CACFP program in Indiana.

14. Childcare providers enrolled in the CACFP program were reimbursed for eligible food expenses incurred in feeding children enrolled in the program. To receive reimbursement, a childcare provider had to provide children with healthy foods approved by the program. A childcare provider also had to verify that it incurred these food expenses by providing copies of invoices or receipts from their food expenses.

15. If approved, funds were disbursed via check or electronic funds transfer to a designated bank account of the participating entity.

**The Scheme to Defraud**

16. Beginning in or around January 2017, and continuing until at least in or around April 2024, JACKSON devised and executed a scheme to defraud the federal government by means of materially false and misleading pretenses, representations, and promises, and by concealment of material facts, related to how she operated her Daycares, as further described below (the "Scheme").

17. The objective of the Scheme was for JACKSON to enrich herself by fraudulently obtaining government funds from the CCDF and CACFP programs to which she was not entitled.

**CCDF Funds**

18. As part of the Scheme, JACKSON fraudulently obtained CCDF funds by falsely reporting that children attended Little Angels at particular dates and times, when in fact JACKSON knew that those children were not in attendance at Little Angels at those dates and times.

19. JACKSON and parents of children who were eligible for CCDF funding agreed to allow JACKSON to claim that the children attended Little Angels on particular dates or times in which they were not attending. In return, those parents received kickback payments from JACKSON.

20. The means and methods in which JACKSON and the parents agreed to defraud the federal government included the following:

a. JACKSON directed parents to enroll children who did not need childcare in the CCDF program. JACKSON falsely reported that they attended Little Angels, when in fact they did not attend Little Angels at all.

b. JACKSON directed parents to represent on the CCDF application that their children required full-time care, when in fact their children required only part-time care. JACKSON falsely reported that those children attended Little Angels for periods that were greater than their actual attendance.

c. Children who were legitimately enrolled in the CCDF program and attending Little Angels ceased attending Little Angels. JACKSON directed the parents to continue to apply for the CCDF program, and JACKSON continued to represent that the children attended Little Angels, when in fact they no longer attended Little Angels.

21. JACKSON used two primary methods to falsely report the children's attendance. First, JACKSON possessed HWCC cards and swiped children in and out of Little Angels, even though they were not in attendance at that time. Second, JACKSON called the IVR phone system to falsely report that children had attended Little Angels when in fact they had not.

22. In determining the amount of CCDF funds owed to JACKSON, the program used the false reports of children's attendance at Little Angels to calculate the amount to be paid to JACKSON.

23. CCDF funds were transferred to the designated bank account to receive CCDF funds and then ultimately to a bank account controlled by JACKSON. JACKSON regularly withdrew most or all the CCDF funds in cash. JACKSON then split the CCDF funds with parents who agreed to participate in the Scheme through a variety of ways. JACKSON paid the parents through Cash App and left cash in various locations, including hidden behind the Little Angels' gutter.

24. For example, Parent 1 had five children that were enrolled in the CCDF program in Indiana and received vouchers to attend Little Angels. In or around October 2022, Parent 1 and her five children moved from Indiana to Texas. Parent 1 and JACKSON agreed that JACKSON would falsely report to FSSA that all five children still attended Little Angels, allowing JACKSON to receive CCDF funds to which she was not legally entitled. JACKSON and Parent 1 further agreed to split the CCDF funds.

25. Specifically, on November 5, 2022, JACKSON used the IVR system to report the attendance of Parent 1's children at Little Angels for the month of October 2022. JACKSON falsely reported five of Parent 1's children attended Little Angels on October 3, October 10, October 11, October 17, or October 18, 2022. JACKSON reported that each child attended Little Angels for at least 14 hours per day on each of these dates. This started as early as 5 A.M. and as late as 11:22 P.M.

26. Parent 1's children did not attend Little Angels on the dates JACKSON claimed. In fact, Parent 1's children were attending school in Texas on the same days JACKSON claimed they were attending Little Angels.

27. Based on the attendance JACKSON falsely reported using the IVR system for Parent 1's children, approximately $525.60 in CCDF funds were transferred to a bank account ultimately controlled by JACKSON. Shortly after receiving the CCDF funds, JACKSON sent approximately $164.00 to Parent 1 via Cash App.

28. JACKSON repeated this Scheme for dozens of children, reporting hundreds of false attendance records using the IVR system or by swiping a HWCC card for a child who had not attended Little Angels. As a result, JACKSON received approximately $357,378.40 in CCDF funds to which she was not entitled.

**CACFP Funds**

29. As part of the Scheme, JACKSON fraudulently obtained CACFP funds to which she was not entitled.

30. JACKSON created fraudulent invoices from food providers and caused the invoices to be submitted to the CACFP program for reimbursement. Through these invoices, JACKSON claimed to have served food that she never purchased or provided to children at her Daycares.

31. For example, JACKSON submitted an invoice for $1,094.62 for steak, baby back ribs, tilapia, and beef roast. This invoice, however, was false; JACKSON did not purchase or serve this food. Similarly, JACKSON submitted fraudulent receipts from a fictional business

called "Ray's Meats" in Louisville, Kentucky. Some of these invoices misspelled the business as "Meets" instead of "Meats."

32. As a result, JACKSON received CACFP funds to which she was not entitled.

**COUNT 1**
Wire Fraud
18 U.S.C. § 1343

33. Paragraphs 1-33 are re-alleged and incorporated herein by reference.

34. Beginning in or about January 2017, and continuing until in or about April 2024, in the Southern District of Indiana, SHARON JACKSON, Defendant herein, having devised a Scheme or artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations, and promises, did, for the purpose of executing such Scheme and attempting to do so, cause to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | On or About Date | Description of Wire Communication |
|---|---|---|
| 1 | November 5, 2022 | JACKSON called to falsely report the attendance of Parent 1's children using the Interactive Voice Response phone system. |

In violation of Title 18, United States Code, Section 1343.

**COUNT 2**
Failure to File An Individual Income Tax Return
26 U.S.C. § 7203

35. During the calendar year 2022, SHARON JACKSON, Defendant, had and received gross income in excess of $12,950. By reason of such gross income, JACKSON was required by law, following the close of calendar year 2022, and on or before April 18, 2023, to make an income tax return to the Internal Revenue Service, stating specifically the items of her gross income and any deductions and credits to which she was entitled. Knowing and believing

all of the foregoing, JACKSON did willfully fail, on or about April 18, 2023, in the Southern District of Indiana and elsewhere, to make an income tax return.

In violation of Title 26, United States Code, Section 7203.

FORFEITURE

1. The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense in violation of Title 18, United States Code, Section 1343 set forth in Count 1 of this Information, SHARON JACKSON, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to or an order of forfeiture in the amount of proceeds the Defendant obtained from the offense.

3. If any of the property described above, as a result of any act or omission of the Defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

THOMAS E. WHEELER II
United States Attorney

By: ______________________________
Adam Eakman
Meredith Wood
Assistant United States Attorneys

______________________________
Kyle M. Sawa
Chief, General Crimes Unit